FARRIS, Circuit Judge:
BACKGROUND
Transcontinental Energy Corporation went into bankruptcy in late 1977. Its assets included limited partnership interests in four oil producing properties. These were sold with the bankruptcy court’s approval to appellee Pacific Energy Resources, a company whose controlling owner was Richard Young. After the sale, a group of Transcontinental’s minority shareholders and creditors petitioned the bankruptcy court to set that sale aside because of inadequate price, mistake, fraud, and breach of fiduciary duty. After holding a full evidentiary hearing, the bankruptcy court denied the request. The bankruptcy court also denied two motions to reopen the hearing to receive additional evidence, and a motion to reconsider the exclusion of a deposition from the hearing. In re Transcontinental Energy Corp., 1 B.R. 460 (Bkrtcy.D.Nev.1979). The district court affirmed. The shareholders appeal.
*328 VALIDITY OF THE SALE
We are especially hesitant to set aside confirmed bankruptcy sales, but will do so “when compelling equities outweigh the interests in finality.” In re Cada Investments, Inc., 664 F.2d 1158, 1162 (9th Cir. 1981); see Proctor & Gamble Mfg. Co. v. Metcalf, 173 F.2d 207, 209 (9th Cir. 1949). Because of the great interest in the finality of judicial sales, the standard for setting aside a confirmed sale is stricter than the standard for rejecting a proposed sale. In re General Insecticide Co., 403 F.2d 629, 630-31 (2d Cir. 1968).
The shareholders rely primarily on two related theories for setting aside the sale. The shareholders first argue that Transcontinental’s president, Edward Dewey, breached his fiduciary duty of loyalty by assisting Pacific Energy in the competitive bidding process, and that Pacific Energy, through its controlling shareholder, Richard Young, knowingly participated in and profited from this breach of fiduciary duty. A third party cannot knowingly take advantage of a fiduciary’s breach of duty. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418 (1921); Restatement (Second) of Trusts § 326 (1959). However, in this case the bankruptcy court found that the shareholders had failed to prove Dewey had committed any acts which would constitute a breach of fiduciary duty; the bankruptcy court found only “[unsubstantiated hypotheses and groundless innuendos.” Transcontinental, 1 B.R. at 463. This finding is not clearly erroneous. We therefore reject the shareholders’ argument predicated on third party participation in a breach of fiduciary duty.
The shareholders next argue that because Pacific Energy’s controlling shareholder, Young, stood in a direct fiduciary relationship with Transcontinental, Pacific Energy was disqualified from acquiring any assets of the bankrupt estate. The claim of a direct fiduciary relationship between Young and Transcontinental is based on 1) Young’s status as operator and manager of one of the four oil producing properties in which Transcontinental had a leasehold interest, and which was subsequently sold to Young’s company, and 2) the fact that Young and Transcontinental’s president, Dewey, had had several prior business dealings together. Young had helped Dewey obtain financing for a new company, and Dewey had helped Young and Pacific Energy in connection with their acquisition of interests in certain oil producing properties. The shareholders claim this contact between Young and Transcontinental and between Young and Dewey was sufficient to create a fiduciary relationship and disqualify Young and Pacific Energy from acquiring any of the assets of the bankrupt estate.
But not every employee of a bankrupt is disqualified from purchasing the bankrupt’s assets; the equitable bar applies only to employees whose position within the bankrupt requires unfailing loyalty, trust, and confidence. Even a fair transaction for adequate consideration will be set aside if there is an appearance of impropriety and a great potential for a conflict of interests.
The shareholders rely too heavily on the broad dicta in Donovan & Schuenke v. Sampsell, 226 F.2d 804 (9th Cir.), cert. denied, 350 U.S. 895, 76 S.Ct. 152, 100 L.Ed. 787 (1955):
The considerations of public policy make any person a trustee or fiduciary who has had a connection with any other person or entity or who has been employed or concerned with the affairs of others and thereby acquired a knowledge of the property and concerns of the others.
Id. at 811. See also In re Frazin & Oppenheim, 181 F. 307, 309 (2d Cir. 1910).
Donovan & Schuenke involved the sale of a bankrupt’s assets to the bankrupt’s former president, who at the time of the sale was employed by the trustee and appointed by the court to help sell the assets. In contrast, Young was never an officer of Transcontinental, had been neither hired by the trustee nor appointed by the court to assist with the sale of any of Transcontinental’s assets, and in fact only helped in the management of one of the four oil and *329 gas producing properties involved in this action. The bankruptcy court found that Young’s business dealings with Dewey were on an arms’ length basis, and rejected the allegation that there was a connection between these other dealings and the sale of Transcontinental’s oil leasehold interests. The bankruptcy court concluded that Young was merely an independent contractor whose employment was not approved by the court or trustee. While we agree with the shareholders that Young had more responsibility than an independent contractor and that the court placed too much emphasis on the absence of any official approval of Young’s employment, we reject their argument that his employment status within Transcontinental was significant enough to warrant setting aside the sale. Young operated only one of the four oil producing properties involved in this action. These oil properties comprised only a part of Transcontinental’s entire estate. Unlike a corporate officer, who would have a more comprehensive knowledge of a bankrupt’s overall financial health, Young had acquired greater knowledge of only one portion of Transcontinental’s assets. Acquisition of this knowledge alone does not preclude a person from bidding on a bankrupt’s assets. See Bray v. United States Fidelity & Guaranty Co., 267 F. 533, 543 (4th Cir. 1920).
Bray involved many parallels to the present case. The court there declined to set aside the sale of a bankrupt’s legal claims to its former president and general manager even though he had greater knowledge of the probable success of the court claims, was a friend of the trustee, and had been hired by the trustee to manage the claims he later purchased. As in the present case, Bray also involved unsubstantiated charges of fraud and conspiracy between the purchaser and the bankrupt’s fiduciaries. Id. at 542. The speculative nature of the legal claims purchased in Bray are similar to the confused and unclear oil interests purchased by Young. See id. at 543.
The bankruptcy court’s decision is also consistent with the decisions of several other courts. See, e.g., In re Beck Industries, Inc., 605 F.2d 624, 635-37 (2d Cir. 1979) (the court declined to follow the broad principles in Donovan & Schuenke); In re Rex Body Corp., 138 F.2d 912, 913 (2d Cir. 1943) (with little discussion and no reference to its prior decision in In re Frazin & Oppenheim, 181 F. 307 (2d Cir. 1910), the court declined to set aside the sale of a bankrupt’s assets to its directors and creditors); In re National Mining Exploration Co., 193 F. 232, 236-37 (D.Mass.1911).
We affirm the bankruptcy court’s conclusion that Young did not owe a fiduciary duty to Transcontinental on the basis of either his job position or his business relationship with Dewey.
We also reject the argument that the sales price was inadequate. The bankruptcy judge heard conflicting evidence, discredited the shareholders’ self-serving appraisals, and concluded that the price was adequate. Transcontinental, 1 B.R. at 465. This finding was not clearly erroneous. See Bankr.R. 810 and 752; In re Christian & Porter Aluminum Co., 584 F.2d 326, 335 (9th Cir. 1978); Monroe v. Cussen, 454 F.2d 1151, 1152 (9th Cir.), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). The trustee considered it wise to expeditiously and economically sell the oil claims “as is” rather than wait until the quality and extent of the oil interests could be legally clarified. The trustee reasonably believed that the expenses of litigation would be greater than any financial advantage Transcontinental might gain from giving potential bidders a more accurate assessment of the assets. The only other bid of $130,000 was conditioned on a guaranty of the validity of one of the oil interests. The court, trustee, and attending creditors all rejected that bid. One appraisal estimated the value of the properties to be $127,600, only slightly less than Pacific Energy’s $140,000 bid which was accepted.
The other grounds asserted for setting aside the sale are without merit. The bankruptcy court’s denial of the request to set aside the sale is affirmed.
*330 EVIDENTIARY RULINGS
The shareholders argue that the bankruptcy judge abused his discretion by excluding a deposition from the hearing and by denying their request to reopen the hearing to receive a letter and additional testimony.
The deposition was excluded because the shareholders had not met their burden of proving, under Fed.R.Civ.P. 32(a)(3)(B), see Bankr.R. 732, that the deponent lived more than one hundred miles from the place of the hearing. Cf. Grisom v. Logan, 334 F.Supp. 273, 279 (C.D.Cal.1971).
The letter, which was offered after the hearing but before oral argument, was properly excluded because the shareholders failed to demonstrate that the letter could have been discovered with due diligence prior to the hearing, and also because the letter had little probative value.
After oral argument but before judgment was entered the shareholders sought to introduce the testimony of one Jack Stewart to the effect that Dewey informed him that the bankruptcy court had received a cash offer of $750,000 for Transcontinental’s oil interests. The implication was that Dewey had wrongfully attempted to discourage competition in the bidding process by falsely telling Pacific Resources’ potential bidders that a very high cash offer had been made. Though such evidence, if credible, would tend to support the claim that Dewey breached his fiduciary duty of loyalty, our careful review of the record as a whole satisfies us that the bankruptcy judge did not commit clear error in concluding that such evidence would not have affected his decision not to set aside the sale.
The shareholders did not show good cause for reopening the hearing and we find no abuse of discretion in the bankruptcy court’s evidentiary rulings. See California Airmotive Corp. v. Bass, 354 F.2d 453, 455 (9th Cir. 1965).
The shareholders’ other arguments are without merit.
Affirmed.